(No. 14748.—Judgment affirmed.)
CHARLES FRIEND & Co., Appellant, vs. THE GOLDSMITH & SEIDEL Co., Appellee.

*Opinion filed February 21, 1923.*

1. CORPORATIONS—*corporation has no domicile as a citizen.* A corporation is not a citizen of any State or country, and has no home, domicile, residence or citizenship in the sense in which those terms are applied to natural persons, and while a corporation can not legally change its residence from the place of its incorporation, it may by its agents transact business anywhere unless prohibited by its charter or local laws, and it may attach to its existence such attributes as the laws of the place where it operates have granted.

2. SAME—*extent to which corporations are held to be citizens.* Corporations are held to be citizens of the State of their creation ·for the purpose of determining the jurisdiction of the Federal courts, but they are not citizens within the meaning of the provisions of the constitution guaranteeing the citizens of each State all the privileges and immunities of citizens of the several States . and which prohibit any State from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States, but they are persons within the meaning of the provisions concerning due process of law and the equal protection of the laws.

3. SAME—*foreign corporations are subject to power of State in which they operate.* While foreign corporations, in the absence of statutes on the subject, have been permitted by comity to operate and to transact business outside the boundaries of the State of their creation, the activities and liabilities of such corporations are now defined by statutes, and the State has the undoubted right to exclude such corporations altogether, except those engaged in interstate or foreign commerce or in the employ of the Federal government, or to exclude some and admit others, and to prescribe such conditions as the legislature may determine for all.

4. SAME—*purpose of statutes regulating foreign corporations.* The manifest purpose of statutes regulating the activities of foreign corporations in Illinois is to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations and to compel a compliance by foreign corporations with all the regulations applying to domestic corporations of like character, and by implication such statutes grant to foreign corporations the same powers enjoyed by domestic corporations.

5. SAME—*foreign corporation doing business in Illinois is not subject to attachment as a non-resident.* Under the statute expressly conferring upon foreign corporations admitted to do business in Illinois the same rights and privileges enjoyed by domestic corporations, a foreign corporation is relieved from liability to attachment on the ground that it is a non-resident.

6. WORDS AND PHRASES—*meaning of the word "citizen."* The word "citizen" implies a person inhabiting a city, town or State and possessed of some rights because of that fact.

7. PLEADING—*when rule requiring plea to jurisdiction to be in person does not apply.* The technical rule requiring a plea to the jurisdiction to be in person, and that an appearance by an attorney amounts to a general appearance and waives all objections to the jurisdiction of the court, has no application to a motion to dismiss on jurisdictional grounds under the rules of the municipal court of Chicago.

8. ATTACHMENT—*evidence of license issued to a defendant foreign corporation is competent under motion to dismiss.* In support of a motion to dismiss an attachment suit against a foreign corporation on the ground that the defendant had applied to the Secretary of State and obtained a license to do business in Illinois, it is proper to introduce in evidence the application for the license, the appointment of an agent for the corporation in Illinois and the license issued by the Secretary of State, where no defect in the foundation for the admission of the documents is specified.

9. NAMES—*misnomer in written instrument may be reconciled by pleading and proof.* An instrument in writing is not void because made to a party by a wrong name, and any misnomer or variance may be reconciled and explained in pleading by averment and avoided in effect by proof.

10. PRACTICE—*specific objection must be made to point out misnomer in written instrument.* A misnomer in a written instrument which is relied upon by a party to a suit can be taken advantage of only by a specific objection pointing out the variance, so that the party may have an opportunity to avoid it either by amendment of the pleadings or the introduction of explanatory evidence.

11. SAME—*when question of variance in name comes too late on appeal in attachment.* Where there is a motion to dismiss an attachment suit against a foreign corporation on the ground that the defendant had obtained a license to do business in Illinois, the question of a variance between the name given in the license offered in evidence and the name of the defendant as alleged in the motion to dismiss cannot be raised for the first time on appeal.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. C. F. McKINLEY, Judge, presiding.

LEE J. FRANK, and CHARLES H. PEASE, for appellant.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, (LAWRENCE A. COHEN, RALPH KALISH, and HENRY JACKSON DARBY, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Charles Friend & Co., a corporation, began a suit in attachment in the municipal court of Chicago against Goldsmith & Seidel Co., a corporation, the affidavit charging that the defendant was not a resident of this State and that its place of residence was 100 South Commercial street, St. Louis, Missouri. The writ of attachment was served on Guggenheim Bros., a corporation, as garnishee, and the defendant moved to dismiss the cause and quash the attachment. The court sustained the motion, discharged the garnishee, quashed the attachment and dismissed the suit, rendering judgment against the plaintiff for costs. The plaintiff appealed to the Appellate Court, which affirmed the judgment, granted a certificate of importance and allowed an appeal to this court.

Rule 12 of the municipal court is contained in the bill of exceptions. It is as follows:

"Rule 12. *Abatement*—The defendant shall by motion to dismiss supported by affidavit set up such matters in abatement as would be set up in the circuit court by plea in abatement supported by affidavit."

The appellee's motion to dismiss the cause and quash the writ was supported by an affidavit of an agent of the appellee that the appellee was incorporated under the laws of Missouri on April 3, 1918, having its principal office in

St. Louis; that it had applied to the Secretary of State of the State of Illinois for a license to do business in the State, had complied with all the requirements of the statute in that regard and had received such license on April 16, 1918; that it has ever since that time had its legally appointed agent in Cairo, Alexander county, Illinois, upon whom service of process could be obtained, and has ever since that time been, and is now, actually engaged doing business in Illinois, and has always had assets of the approximate value of $100,000 invested in Cairo and used in connection with its business in Illinois. Under the rule adopted as provided in the Municipal Court act, the motion and affidavit were equivalent to a sworn plea in abatement.

The most important question in the case is whether a foreign corporation doing business in this State under the license authorized by law is subject to attachment as a non-resident. The statute authorizes an attachment when the debtor is not a resident of this State, and in *Mineral Point Railroad Co.* v. *Keep,* 22 Ill. 9, an action of debt in which an attachment in aid was issued against the defendant, a Wisconsin corporation, upon an affidavit stating that the defendant was not a resident of the State and had property in Illinois which it was about to remove out of the State, it was said that there could be no question that the defendant and its property were amenable to the attachment process; that the word "person" includes bodies politic and corporate,—as well foreign as domestic,—and if the defendant was a foreign corporation having property in this State it must be regarded as a non-resident debtor and amenable to the process; if a domestic corporation, the allegation that it had property in the State which it was about to remove out of the State to the injury of the creditor was sufficient cause for issuing the writ. In *Iroquois Furnace Co.* v. *Wilkin Manf. Co.* 181 Ill. 582, the affidavit for attachment stated that the defendant, a corporation, was not a resident of the State, that its place of residence

was at Milwaukee, in Wisconsin, but did not state that it was incorporated in Wisconsin and not in Illinois. It was said that it might be conceded that the residence of a corporation is in the State which grants its charter, and the allegation that its residence was at Milwaukee, in the State of Wisconsin, was equivalent to an allegation that it was chartered in the State of Wisconsin. In this case no question appears to have been made as to the amenability of the foreign corporation to the process of attachment, but objections were made only to the sufficiency of the affidavit, bond and notice.

It was very early held that "the residence of a corporation, if it can be said to have a residence, is necessarily where it exercises corporate functions. It dwells in the place where its business is done. It is located where its franchises are exercised. It is present where it is engaged in the prosecution of the corporate enterprise. This corporation has a legal residence in any county in which it operates the road or exercises corporate powers and privileges. In legal contemplation it resides in the counties through which its road passes and in which it transacts its business." (*Bristol* v. *Chicago and Aurora Railroad Co.* 15 Ill. 436.) That was a case of a domestic corporation, and the question for construction was the meaning of the Practice act with reference to the venue of a suit against a railroad company, which was required to be in the county where the defendant resided. Later, however, the same reasoning was applied to the case of a foreign corporation, and it was held, upon the principle announced in the former case, that the residence of a foreign corporation might be in any State where it was by comity permitted to exercise its franchise, and that a railroad company incorporated in Indiana but doing business in this State and having its principal office in Cook county was a resident of that county. (*Bank of North America* v. *Chicago, Danville and Vincennes Railroad Co.* 82 Ill. 493.) This was also a construction of the

307—4

Practice act, a provision of which required a defendant, if a resident of the county in which suit was brought, to file an affidavit of meritorious defense. Similar decisions in other States are *Baldwin* v. *Mississippi and Missouri Railroad Co.* 5 Iowa, 518; *Richardson* v. *Burlington and Missouri Railroad Co.* 8 id. 560; *Lawrence* v. *Ballou,* 50 Cal. 258; *North Missouri Railroad Co.* v. *Akers,* 4 Kan. 453.

It is said that the domicile, residence and citizenship of a corporation are in the State where it is created and that it has no existence beyond the boundaries of that State. In *Ex parte Schollenberger,* 96 U. S. 369, it is said: "A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter, but it may by its agents transact business anywhere unless prohibited by its charter or excluded by local laws." In fact, however, a corporation has no home, domicile, residence or citizenship in the sense in which those terms are applied to natural persons. Whenever those words are applied to a corporation it is in a figurative sense, and they are used with a vagueness of meaning which arises from the fact that they are metaphorical. A corporation is not a citizen of any State or country. Every definition of "citizen" implies a person inhabiting a city, town or State and possessed of some rights because of that fact. Corporations, though not citizens, are held to be citizens of the State of their creation for the purpose of determining the jurisdiction of the Federal courts, (*Wisconsin* v. *Pelican Ins. Co.* 127 U. S. 265,) but they are not citizens within the meaning of section 2 of article 4 of the constitution, which provides that the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States, (*Paul* v. *Virginia,* 8 Wall. 169,) nor within section 1 of the fourteenth amendment, which prohibits any State from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States, (*Orient Ins. Co.* v. *Daggs,* 172

U. S. 557,) though they are persons, within the same section, who may not be deprived of their property without due process of law or denied the equal protection of the laws. *Minneapolis and St. Louis Railway Co.* v. *Beckwith,* 129 U. S. 26.

As has been seen, we have held a foreign corporation doing business in this State to be a resident so as to be required to file an affidavit of merits with its plea when sued, and not to be a resident so as to be subject to be sued in attachment. It cannot change its residence from the place of its incorporation or have a legal existence elsewhere, but it may by its agents transact business anywhere unless prohibited by its charter or local laws. Corporate existence is an ideal thing—not material; a mental conception. Such attributes attach to it as the law of the place where it operates has granted. While corporations had formerly no rights and no existence outside the boundaries of the State of their creation and could not be sued in the courts of a foreign jurisdiction except by their consent, this doctrine has been modified and relaxed so that now, in the absence of a positive prohibition, they are permitted by comity to transact business in foreign States; to make contracts, which they are permitted to enforce and which may be enforced against them; to acquire, sell and transfer property; to sue and to be sued. In many, if not all, of the States statutes have been passed to regulate the activities and define the liabilities of such corporations and prescribe definitely the conditions on which they may do business in the State. The State has the undoubted right to exclude corporations altogether, except those engaged in interstate or foreign commerce or in the employ of the Federal government, to exclude some and admit others, and to prescribe such conditions as the legislature may determine for all. The result has been that for a number of years it has been a part of the statutory law of this State that no foreign corporation can do business in the State except by

virtue of a license from the Secretary of State. These statutes have been amended from time to time, and we have held that the manifest purpose of this legislation was to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations, and that foreign corporations doing business in this State possess the same powers as corporations organized under our statutes. *Eaton* v. *Home Missionary Society,* 264 Ill. 88; *Congregational Publishing Society* v. *Board of Review,* 290 id. 108.

The Corporation act of 1872 recognized that foreign corporations were transacting business within this State, and section 26 provided: "Foreign corporations, and the officers and agents thereof doing business in this State, shall be subjected to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers. And no foreign or domestic corporation established or maintained in any way for the pecuniary profit of its stockholders or members, shall purchase or hold real estate in this State, except as provided for in this act."

Section 1 of the act of 1905 "to regulate the admission of foreign corporations for profit, to do business in the State of Illinois," was as follows: "That before any foreign corporation for profit shall be permitted or allowed to transact any business or exercise any of its corporate powers in the State of Illinois, other than insurance companies, building and loan companies and surety companies, they shall be required to comply with the provisions of this act and shall be subject to all of the regulations prescribed herein, as well as all other regulations, limitations and restrictions applying to corporations of like character organized under the laws of this State." (Laws of 1905, p. 124.)

The object of these sections was to compel a compliance by foreign corporations with all the regulations, limitations, restrictions, liabilities and duties applying to corporations

of like character organized under the laws of this State, and by implication they granted to foreign corporations the same powers enjoyed by domestic corporations. *Santa Clara Female Academy* v. *Sullivan,* 116 Ill. 375.

The law in regard to corporations was revised in 1919 by the general Corporation act. (Laws of 1919, p. 316.) Section 84 is as follows: "No foreign corporation shall engage or continue in any kind of business in this State, the transaction of which by domestic corporations is not permitted by the laws of this State. A foreign corporation admitted to do business hereunder shall enjoy the same, but no greater rights and privileges and be subject to all the liabilities, restrictions, duties and penalties now in force or hereafter imposed upon domestic corporations of like character, and to the same extent as if it had been formed under the laws of this State to do the business set forth in its certificate of authority." (Laws of 1919, p. 335.)

In addition to the implied grant in section 26 of the act of 1872, this section expressly confers upon foreign corporations admitted to do business the same rights and privileges enjoyed by domestic corporations. The express grant in the broader language of the statute seems to indicate the purpose to place foreign corporations which have complied with the statute and have been admitted to do business in the State upon precisely the same footing as domestic corporations. While the act does not declare foreign corporations complying with its terms to be domestic corporations nor purport to adopt the foreign corporations, it does clothe foreign corporations with the same powers, rights and privileges and imposes upon them the same liabilities and duties as domestic corporations. There is essentially no difference between the foreign and domestic corporation. The intention was to obliterate any distinction in the treatment of domestic corporations and foreign corporations which had complied with the act. The effect was to give the foreign corporation the same standing in the

eye of the law as the domestic corporation, giving it the same rights and subjecting it to the same remedies, thus relieving it from liability to attachment on the ground that it is not a resident.

The appellant contends that the motion to dismiss and appearance of the defendant having been signed by an attorney and not in person or by an agent, amounted to a general appearance and waived all objections to the jurisdiction of the court. Its counsel cite the case of *Mineral Point Railroad Co.* v. *Keep, supra,* where there was a plea to the jurisdiction, which was held not properly pleaded because it was pleaded by an attorney and not in person. In this case there was no plea to the jurisdiction. In accordance with the rule of the municipal court the objection was raised by motion. The objection is purely technical. It has nothing to do with the merits, and the technical rule in regard to pleas to the jurisdiction has no application to a motion to dismiss under the rules of the court.

The suit was brought against Goldsmith & Seidel Co., a corporation. Goldsmith & Seidel Co., the defendant, moved the court to dismiss the suit and quash the attachment on the ground that the defendant had applied to the Secretary of State for and had obtained a license to do business in the State of Illinois. In support of this motion counsel for the defendant offered in evidence an application to the Secretary of State, the appointment of an agent upon whom service of process could be obtained, and a license issued by the Secretary of State, which counsel stated authorized the defendant to do business in Illinois. Objection was made to this evidence on the ground that it was incompetent, irrelevant and immaterial, that no proper foundation had been laid for its introduction, and that it showed on its face that the defendant was a resident of Missouri. These objections went to the merits of the real, substantial legal controversy between the parties,—the question of the liability to attachment, as a non-resident, of a foreign corpora-

tion lawfully doing business in the State. No suggestion was made of any reason why the license was incompetent, irrelevant and immaterial, other than that a license issued to a foreign corporation authorizing it to do business in the State would not relieve from liability to attachment as a non-resident. No defect in the foundation for the admission of the documents was specified. The last clause of the objection seemed to admit that the documents referred to the defendant. The objection was overruled, and the appellant now makes the objection that the application was made, not in the name of Goldsmith & Seidel Co., but in the name of "Goldsmith & Seidel Company, Hides, Furs, Wool & Pecans."

The license was issued to "Goldsmith & Seidel Company, Hides, Furs, Wool & Pecans," and there was no evidence to identify the defendant as the corporation to which the license was issued. No such objection was made in the trial court. It was assumed by both parties and the court that the license offered in evidence was issued to the defendant. If this objection had been called to the attention of the court the defendant would have had an opportunity to introduce evidence of its identity as the corporation to which the license was issued,—evidence which was unnecessary in view of the objection made. The appellee's motion to dismiss alleged the issuance of a license to it, and the difference between this allegation and the license offered in evidence was merely a variance capable of being explained by evidence. An instrument in writing is not void because made to a party by a wrong name, and any misnomer or variance may be reconciled and explained in pleading by averment and avoided in effect by proof. (*Peake* v. *Wabash Railroad Co.* 18 Ill. 88.) Where such an apparent variance exists it can only be taken advantage of by a specific objection pointing out the variance, so that the party may have an opportunity to avoid it either by amendment of the pleadings or the introduction of explanatory evi-

dence. It is a sufficient answer to the objection of a variance of this character that it was not made on the trial. It comes too late when made for the first time in an appellate tribunal. *Schott* v. *Youree,* 142 Ill. 233; *Swift & Co.* v. *Rutkowski,* 182 id. 18.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*