PAMELA REAL, Special Adm'r of the Estate of William P. Real, Deceased, Plaintiff-Appellant, *v.* K. S. KIM, M.D., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—2883

Opinion filed January 13, 1983.

James H. Canel, Ltd., of Chicago (James H. Canel and Peter J. Posner, of counsel), for appellant.

Steven H. Jesser and McDermott, Will & Emery, of Chicago (Lee J. Dunn, Jr. and Stewart W. Karge, of counsel), for appellee Northwestern Memorial Hospital.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French, Patrick J. Fanning, and Michael J. Hennig, of counsel), for appellees K. S. Kim, M.D., and Northwestern Radiology Group S.C.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Pamela Real, as special administrator of the estate of William Real, filed an action under the Wrongful Death Act and the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 70, par. 1 *et seq.*; ch. 110½, par. 27—6) alleging that medical malpractice by the defendants (K. S. Kim, M.D., Northwestern Memorial Hospital, and Northwestern Radiology Group, a medical corporation) caused the death of William Real.

Defendants' motions to dismiss plaintiff's complaint were granted

by the trial court on the grounds that her claims were barred by section 21.1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 22.1, now codified at section 13—212 of the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 13—212) and that, as a matter of law, the defendants were not estopped from asserting the Limitations Act as a defense. A claim apparently remains pending before the trial court against another physician, but the court found that there was no just reason for delaying appeal of its order (see 87 Ill. 2d R. 304(a)). In her appeal plaintiff presents the following issues:

(1) whether section 21.1 of the Limitations Act bars a special administrator from maintaining a medical malpractice action on behalf of a decedent's estate in a case where the alleged acts of negligence occurred more than four years before the complaint was filed;

(2) whether a wrongful death action can be brought in a case where, on the date of the death complained of, the Limitations Act would have precluded the decedent from bringing an action on his own behalf for the acts which allegedly caused his death;

(3) whether the complaint states facts which, if proven, would estop the defendants from raising the Limitations Act as a defense;

(4) whether an entity formed under the Medical Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 631 *et seq.*) to diagnose and treat human ailments constitutes a "physician" under section 21.1 of the Limitations Act.

The following allegations (which are assumed to be true for the purpose of resolving the legal issues presented by this appeal) are material to our decision:

William Real suffered from an unidentified neurological ailment and, as part of a medical evaluation, he was referred to Northwestern Memorial Hospital in April of 1976 for what the complaint calls "an EMI scan with and without infusion." This test was performed by various unknown physicians who worked for Northwestern Radiology Group, a medical corporation, and on April 13, 1976, the test results were evaluated and reported as normal by Dr. K. S. Kim, another employee of the medical corporation.

According to the complaint, this diagnosis was incorrect because proper interpretation of the results of the EMI test would have "disclosed the presence of an abnormality." In the alternative, the complaint alleges that the defendants failed to properly conduct the test, or failed to report that the test results were so equivocal that they were "of no diagnostic value." Each of these acts or omissions allegedly constitutes negligence.

In June of 1979, more than three years after he was allegedly

misdiagnosed, William Real was diagnosed as having brain cancer. But because the misdiagnosis allegedly given by the defendants in April of 1976 induced William to delay seeking further medical assistance, the cancer was terminal by the time it was discovered, and William died on August 9, 1980.

Then, on June 19, 1981 (more than four years after the alleged acts and omissions concerning the EMI test), plaintiff filed a medical malpractice action against the defendants.

The pertinent portion of section 21.1 of the Limitations Act provides that,

> "No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." Ill. Rev. Stat. 1979, ch. 83, par. 22.1, now codified at section 13—212 of the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 13—212.

The first issue is whether this limitations provision barred plaintiff from bringing a medical malpractice action against the defendants. Plaintiff asserts that a cause of action for medical malpractice did not accrue, and the two-year "discovery" limitations period did not begin to run, until the point in time when William Real's brain cancer became incurable. Thus plaintiff concludes that the defendants had the burden of proving that plaintiff's complaint was not filed within two years of when William knew or should have known that his cancer had become incurable.

We need not decide whether plaintiff has correctly identified when William Real's cause of action accrued because section 21.1 bars the survival action filed on behalf of William's estate even if a cause of action did not accrue until William died.

Section 21.1 plainly states that "in no event shall [a medical malpractice] action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of [the complained of] injury or death." (Ill. Rev. Stat. 1979, ch. 83, par. 22.1, now codified at section 13—212 of the

Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 13—212.) Under this portion of section 21.1, the four-year limitations period begins to run from the date of the alleged acts of negligence, even if the resulting injury or death did not occur (and a cause of action for negligence did not accrue) until after the limitations period expired.

We recognize that it offends common sense notions of justice for the law to say that the right to invoke a legal remedy expired before the alleged wrongdoing was or could reasonably have been discovered (see *West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 131), but

> "Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay." *Chase Securities Corp. v. Donaldson* (1945), 325 U.S. 304, 314, 89 L. Ed. 1628, 1635, 65 S. Ct. 1137, 1142.

Where, as with section 21.1 of the Limitations Act, the General Assembly has clearly manifested its intent through unambiguous statutory language, the only legitimate role for the courts is to give effect to the statute in question—unless it is unconstitutional. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84; *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66.) "There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.

■■ In the present case, the alleged acts and omissions of medical malpractice occurred in April of 1976, but a cause of action was not filed until June of 1981—more than five years after the alleged wrongdoing. Plaintiff does not argue that section 21.1 is unconstitutional (see *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 311-21), and our only legitimate role is to apply the unambiguous statutory language which bars a medical malpractice action from being brought more than four years after the acts or omissions which eventually caused the complained of injury or death.

■■ It is not clear whether plaintiff asserts that section 21.1 is not applicable to cases brought under the Probate Act of 1975, but a stat-

ute of limitations runs against a cause of action, not against the holder of the cause of action. (*O'Connell v. Chicago Park District* (1941), 376 Ill. 550, 557.) Under the Probate Act of 1975, the right to bring a cause of action is transferred, by operation of law, from the decedent to the representative of his estate. (See Prosser, Torts sec. 127, at 901 (4th ed. 1971).) Consequently, "a cause of action which a deceased in his lifetime was estopped from asserting is not available to his personal representative ***." 2 Horner, Probate Practice and Estates sec. 817, at 64 (4th rev. ed. 1975).

The second issue is whether plaintiff can maintain an action under the Wrongful Death Act even though, on the date of the death complained of, the decedent would have been barred from bringing an action for the acts which purportedly caused his death.

Section 1 of the Wrongful Death Act states that,

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." Ill. Rev. Stat. 1979, ch. 70, par. 1.

The pertinent portion of section 2 of the Wrongful Death Act states that "[e]very [wrongful death] action shall be commenced within 2 years after the death" which is the basis for the lawsuit. (Ill. Rev. Stat. 1979, ch. 70, par. 2.) Focusing on the limitation period provided in section 2, plaintiff asserts that her wrongful death action is timely because it was filed within two years of when William Real died.

According to plaintiff, we should "refuse to extend" section 21.1 of the Limitations Act to wrongful death cases. But plaintiff misapprehends the distinction between the two-year limitations period established by section 2 of the Wrongful Death Act and the fact that there is no liability under the Act unless the condition precedent specified by section 1 has been fulfilled.

The plain language of section 1 provides that there will be no liability under the Wrongful Death Act unless the decedent could have maintained an action for damages "if death had not ensued" (Ill. Rev. Stat. 1979, ch. 70, par. 1), and the supreme court has consistently acknowledged and given effect to this unambiguous provision. (See

*Howlett v. Doglio* (1949), 402 Ill. 311, 319; *Clarke v. Storchak* (1943), 384 Ill. 564, 571-72; *Biddy v. Blue Bird Air Service* (1940), 374 Ill. 506, 514-15.) As the supreme court stated in *Mooney v. City of Chicago* (1909), 239 Ill. 414, 423:

> "The statute gives a right unknown to the common law in cases where the wrongful act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages. One condition upon which the statutory liability depends is that the deceased had a right of recovery for the injuries at the time of his death, and there is no right in the administrator to maintain an action unless the deceased had the right to sue at the time of his death."

Under the plain language of section 1, the particular reason why the decedent would have been barred from maintaining an action for damages simply isn't significant, and we are not persuaded by plaintiff's efforts to distinguish away these supreme court decisions based on the particular reason why each decedent would have been barred from maintaining an action on his own behalf.

Plaintiff also finds it significant that these supreme court cases were decided before *Holton v. Daly* (1882), 106 Ill. 131, was overruled by *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423. According to plaintiff, the results in *Mooney, Biddy, Clarke* and *Howlett* would have been different if *Murphy v. Martin Oil Co.* was the law in Illinois when these other cases were decided. But, in overruling *Holton, Murphy* merely held that "the administrator of the decedent's estate could, independent of the Wrongful Death Act, bring an action [under the Survival Act] for damages which would encompass decedent's lost wages, lost property, and pain and suffering endured during the [interval] between injury and death." *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 139.

We recognize that *Murphy v. Martin Oil Co.* represents a very significant development in Illinois law, but it has no bearing in determining whether a decedent could have maintained an action for damages if he had survived. Consequently, *Murphy* has no bearing on whether the representative of a decedent's estate can maintain an action under the Wrongful Death Act.

Similarly, the remaining cases upon which plaintiff relies—*Coleman v. Hinsdale Emergency Medical Corp.* (1982), 108 Ill. App. 3d 525; *Fure v. Sherman Hospital* (1978), 64 Ill. App. 3d 259 (both applying the so-called "discovery rule" to the two-year limitations period provided in section 2 of the Wrongful Death Act); and *Wilson v. Tromly* (1949), 404 Ill. 307 (holding that the limitations period estab-

lished by section 2 of the Wrongful Death Act is applied to cases brought under the Act, rather than the more general provisions of the Limitations Act)—are irrelevant to determining whether a decedent could have maintained an action "if death had not ensued." Ill. Rev. Stat. 1979, ch. 70, par. 1.

■ Finally, plaintiff argues that invoking section 21.1 of the Limitations Act to bar her cause of action for wrongful death violates section 13 of article IV of the 1970 Illinois Constitution. This constitutional provision (which states that "The General Assembly shall pass no special or local law when a general law is or can be made applicable" (Ill. Const. 1970, art. IV, sec. 13)) requires that there be a reasonable basis for legislative classifications. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 314-15.) But in *Anderson* the court held that section 21.1 does not violate the proscription against "special legislation" (79 Ill. 2d 295, 316-21), and the fact that section 21.1 is now being considered in the context of a wrongful death case does not justify disregarding the supreme court's holding on the constitutionality of this limitations provision.

■ As we noted above, at the time death ensued, section 21.1 of the Limitations Act would have precluded William Real from maintaining an action for the conduct which allegedly caused his death. It necessarily follows that section 1 of the Wrongful Death Act precludes plaintiff from bringing a wrongful death action for the same alleged malpractice.

The next issue is whether the complaint states facts which, if proven, would estop the defendants from asserting the defense of limitations.

Equitable estoppel precludes a litigant from denying his prior assertions in cases where it would be unjust to permit the litigant to disavow express or implied statements upon which another party has relied. (*Dill v. Widman* (1952), 413 Ill. 448, 455-56; see also *Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 86; *City of Quincy v. Sturhahn* (1960), 18 Ill. 2d 604, 614.) Thus, equitable estoppel is merely an application of the fundamental principle that a litigant will not be permitted to take advantage of his own wrongdoing. *Bomba v. W. L. Belvidere, Inc.* (7th Cir. 1978), 579 F.2d 1067, 1070.

Application of the doctrine of equitable estoppel "will prevent a defendant, whose representations or other conduct have caused a plaintiff to delay filing suit until after the running of the statutory period, to assert the statute of limitations as a bar to the action." *Burke v. Gateway Clipper, Inc.* (3d Cir. 1971), 441 F.2d 946, 948; see, e.g., *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 158.

Nevertheless, equitable estoppel "comes into play only after the limitations period has run." (*Bomba v. W. L. Belvidere, Inc.* (7th Cir. 1978), 579 F.2d 1067, 1070.) Therefore,

> "[A] defendant is not estopped to raise a limitations point because of any alleged 'lulling' of the plaintiff into inaction until after the limitation period where the 'lulling' period, if there was any, expired months before the statute barred the action and where there was ample time and opportunity for the plaintiff to avail of any legal rights he has." *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 274-75; accord, *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1014; see also Annot., *Plaintiff's Diligence as Affecting His Right to Have Defendant Estopped From Pleading the Statute of Limitations*, 44 A.L.R.3d 760, 764-65 (1972).

The approach taken by the appellate court in *Reat* and *Sabath* is consistent with the rule applied by the supreme court in cases where a plaintiff relies on section 22 of the Limitations Act. (Ill. Rev. Stat. 1979, ch. 83, par. 23, now codified at section 13—215 of the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 13—215.) Under section 22, if a defendant has "fraudulently concealed" the existence of a cause of action, the injured party has five years in which to file a lawsuit after he learns of his right of action.

In *Anderson v. Wagner*, the supreme court (while noting that it was not deciding whether section 22 could be applied to medical malpractice actions) stated that,

> "If at the time the plaintiff discovers the 'fraudulent concealment' a reasonable time remains within the applicable statute of limitations, section 22 of the Limitations Act does not toll the running of the limitation period." 79 Ill. 2d 295, 322.

Applying the applicable equitable principles to the present case, we find that the complaint fails to state facts which would, if proven, estop the defendants from asserting a limitations defense.

Briefly stated, plaintiff's estopped argument is that, in April of 1976, the defendants negligently administered and interpreted a medical test, and that they should be precluded from relying on the Limitations Act because, allegedly, this single act of negligence kept William Real from discovering his true medical condition until his disease was terminal.

However, the complaint also alleges that in June of 1979, William was diagnosed as having brain cancer. At that point, William knew or should have known that he might have been misdiagnosed in 1976. As a result, he then had the burden of investigating whether he had a

cause of action for medical malpractice. (See *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156.) Moreover, the limitations period for any medical malpractice claim which William may have had against the defendants did not expire until April of 1980—approximately 10 months after he knew or should have known of his possible cause of action.

We need not decide whether mere negligence in diagnosing a patient could give rise to an estoppel, because the circumstances relied upon as justifying a delay in filing suit (*i.e.*, Williams' ignorance of the alleged misdiagnosis) ceased to be operational when he was diagnosed as having cancer (*i.e.*, when he should have known he may have been originally misdiagnosed). From that point, William had 10 months in which to file a lawsuit. As a matter of law, this was sufficient time in which to bring an action. See *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1015 (eight-month period after inducement for delay had passed held sufficient).

█ Furthermore, the complaint does not state any facts which would show that the defendants did or said anything after the discovery date to induce William to delay filing an action against them. Accordingly, we hold that the complaint does not state facts which would, if proven, estop the defendants from asserting a limitations defense.

The final issue is whether Northwestern Radiology Group, a medical corporation, is covered by section 21.1 of the Limitations Act. Section 21.1 applies to "any physician or hospital duly licensed under the laws of this State" (Ill. Rev. Stat. 1979, ch. 83, par. 22.1, now codified at section 13—212 of the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 13—212), and plaintiff argues that a medical corporation is neither a licensed physician nor a licensed hospital.

We disagree. A physician is a person who practices medicine (*i.e.*, diagnoses and treats human ailments) (*People ex rel. Gage v. Siman* (1917), 278 Ill. 256, 257-58), and section 2 of the Medical Corporation Act authorizes the formation of corporations "for the study, diagnosis and a treatment of human ailments and injuries ***." (Ill. Rev. Stat. 1979, ch. 32, par. 632; compare *People v. United Medical Service, Inc.* (1936), 362 Ill. 442, 454, 456 (decided before the Medical Corporation Act was enacted; holding that Illinois law prohibited corporations from practicing medicine).) Moreover, a corporation formed to practice medicine must be licensed by the State. (Ill. Rev. Stat. 1979, ch. 32, pars. 635 through 642.) Therefore, a corporation formed under the Medical Corporation Act can lawfully practice medicine, just like any individual who is a licensed physician.

The Medical Corporation Act was passed in 1963 (1963 Ill. Laws 3513), but the pertinent portion of the Limitations Act wasn't enacted until 1975 (Pub. Act. 79—960, 1975 Ill. Laws 2894). So the key question in this case is whether the legislature intended that the phrase "physician," as used in section 21.1 of the Limitations Act, should encompass medical corporations.

As commonly used, the word "physician" suggests a natural person. But the law regards corporations as artificial persons (1 W. Fletcher, Cyclopedia of Corporations sec. 7, at 37 (1974 rev. ed.)), and courts have frequently construed the term "person" in constitutional and statutory provisions as encompassing both natural persons and corporations. See, *e.g., Charles Friend & Co. v. Goldsmith & Seidel Co.* (1923), 307 Ill. 45, 50-51; *Mineral Point R.R. Co. v. Keep* (1859), 22 Ill. 9, 18-19.

In determining the legislature's intent in enacting section 21.1 of the Limitations Act, it is important to note that all the officers, directors, and shareholders of medical corporations, as well as the employees who practice medicine on behalf of such corporations, must be licensed physicians. (Ill. Rev. Stat. 1979, ch. 32, pars. 632, 643.) It would have been illogical for the legislature to provide that all the officers, directors, shareholders, and physician-employees of medical corporations could take advantage of the special limitations period provided by section 21.1 for medical malpractice actions, but that the corporation itself was subject to the so-called "long tail" of potential liability which used to exist for physicians when most malpractice actions were governed by section 14 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 15, now codified at section 13—202 of the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 13—202) as construed by *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 40 (holding that a cause of action for medical malpractice did not accrue until the "discovery date"—no matter how far in the future that date occurred).

■■ We are convinced that the legislature did not intend this discrepancy, and we hold that the word "physician," as used in section 21.1 of the Limitations Act, includes corporations formed to practice medicine under the Medical Corporations Act.

Based on all the preceding reasons, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P.J., and WILSON, J., concur.