WILLIAM LISSNER, Plaintiff-Appellant, v. MICHAEL REESE HOSPITAL AND MEDICAL CENTER, Defendant-Appellee.

First District (3rd Division)   No. 1—88—0071

Opinion filed April 12, 1989.

James P. Chapman & Associates, Ltd., of Chicago (James P. Chapman and Kathleen Hogan Morrison, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (William P. Dorr, David C. Hall, and Hugh C. Griffin, of counsel), for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, William Lissner, appeals from an order of the trial court granting the motion of defendant, Michael Reese Hospital and Medical Center (Michael Reese), to dismiss plaintiff's first amended complaint as being barred by the four-year statute of repose set forth in section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—212). Plaintiff's action sounds in medical negligence arising out of defendant's administering irradiation treatments to plaintiff in 1946. The complaint also alleges, among other things, that defendant negligently made false representations and omissions of material fact during a medical recall program of irradiated patients in

1978. As a result of the irradiation treatment, plaintiff developed thyroid cancer and parathyroid disease, which condition was discovered in 1982.

On appeal plaintiff contends that the trial court erred in dismissing the action as untimely as a matter of law, since the amended complaint sufficiently alleged facts to indicate that equitable estoppel should apply to preclude defendant from invoking the statute of repose. Plaintiff contends that the applicability of the equitable estoppel exception to the application of the statute of repose, at a minimum, raised a question of fact for the jury. Further, plaintiff contends that public policy considerations and the decision in *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 665, require a trial in the instant matter.

For the reasons stated below, we affirm the judgment of the circuit court.

The record indicates that in July 1946, when plaintiff was three years old, the defendant hospital administered X-radiation treatments to his tonsils, thyroid, and parathyroid glands for treatment of a tonsil ailment. In 1973, the results of a University of Chicago study were published, indicating that "thyroid abnormalities" may develop in patients who had received such x-ray exposure, and that the abnormalities may develop two or more decades after exposure (Degroot & Paloyan, *Thyroid Carcinoma & Radiation: A Chicago Endemic*, 225 J. Am. Med. A. 487 (1973)). In 1974 Michael Reese began a "recall program" for adult patients who had received the X-ray treatments during the 1940's and 1950's.

On June 21, 1974, as part of its recall program, Michael Reese wrote a letter to plaintiff, indicating that he had received irradiation therapy in 1946. The letter states that "it is now well recognized that patients who received x-ray treatment to the head and neck regions during childhood have an increased risk of developing thyroid neoplasms, both benign and malignant." The letter recommends examination of plaintiff's thyroid glands. The letter also states that patients with "equivocal abnormalities" should be reexamined every six months, and that patients who "are apparently normal" should be examined "probably every year as they may develop nodules." In response to the letter, plaintiff underwent a thyroid examination at Michael Reese in 1974. Defendant advised plaintiff that the examination showed plaintiff's thyroid to be normal.

On March 22, 1978, Michael Reese again wrote to plaintiff, indicating a desire to reexamine him and other patients who previously were examined under the recall program. The letter was written by

Dr. Arthur B. Schneider. The letter indicates that a blood sample of plaintiff was obtained in 1974. The letter states that Dr. Schneider and others "recently completed and analyzed *** measurements" of the plasma thyroglobulin level in the blood of patients. The results of the analysis indicated that the thyroglobulin level in plaintiff's blood "was higher than that of most of the people we saw who had normal thyroid examinations. We also found that the majority of patients who had thyroid nodules also had high thyroglobulin levels." The letter further states that "[a]t the present time it is not known with certainty how often a thyroid scan is necessary, but, through these examinations, we expect to find out." Plaintiff underwent the additional examination and was told orally that his thyroid was normal.

Michael Reese sent another letter to plaintiff on June 27, 1978, indicating the results of defendant's June 22, 1978 examination of plaintiff. The letter, written by Dr. Schneider, indicates that the examination failed to detect "any thyroid or salivary gland nodules or any other abnormalities." In addition, the letter states, "At this point we are still uncertain as to how often, if ever, thyroid scans should be repeated in all irradiated patients. For patients who have had nodules, however, it is our opinion that periodic scintigraphy is clearly indicated."

On June 16, 1982, plaintiff learned that he had a malignant papillary-follicular thyroid tumor and advanced parathyroid disease. Plaintiff learned of the condition in the course of surgery for an apparently unrelated condition at a hospital other than Michael Reese. On June 8, 1984, plaintiff filed the instant suit. In 1986, the supreme court handed down its decision in *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 665, which held that the applicable four-year statute of repose (Ill. Rev. Stat. 1987, ch. 110, par. 13—212) barred that plaintiff's action based on X-radiation therapy he had received as a child in 1949. In *Mega*, the plaintiff was notified by the defendant hospital in 1973 that there was a possible link between radiation therapy and thyroid cancer. The plaintiff was examined in 1973 and found to be normal. In 1981, the plaintiff first learned of malignant lumps in his thyroid.

The court in *Mega* held that the statute of repose required that an action arising out of X-ray therapy treatments must be brought within four years of September 19, 1976, the effective date of the statute, or be forever barred. (*Mega*, 111 Ill. 2d at 422, 434-35.) *Mega* also, however, provided for an exception to the application of the statute of repose as a bar to an action where equitable estoppel is shown. (*Mega*, 111 Ill. 2d at 424-25.) While the court in *Mega* indicated that

such an exception would be available under appropriate circumstances, the court found that the equitable estoppel exception did not apply to the facts before it. *Mega*, 111 Ill. 2d at 424-25, 428-29.

After the *Mega* decision was issued, plaintiff in the instant case filed his amended complaint, asserting that equitable estoppel applies to preclude defendant from invoking the statute of repose as a bar to plaintiff's action. Defendant filed a motion to dismiss the first amended complaint in lieu of an answer, asserting that equitable estoppel did not apply to plaintiff's case. The trial court granted defendant's motion. Plaintiff then filed a motion to vacate the dismissal order and for leave to file a second amended complaint, which alleged further facts in an attempt to establish equitable estoppel. The trial court denied plaintiff's motion, and plaintiff appealed.

■ The statute of limitations applicable in *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 665, is the same statute of limitations pertinent to the instant case. The statute provides in pertinent part:

> "No action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death except as provided in Section 13—215 of this Act [regarding fraudulent concealment]." Ill. Rev. Stat. 1985, ch. 110, par. 13—212.

The court in *Mega*, in holding that section 13—212 barred the plaintiff's medical malpractice action as untimely filed, stated, "[w]e realize that our holding here means that plaintiff Mega's action was barred before he learned of his injury. That is the effect of the four-year period of repose [Ill. Rev. Stat. 1985, ch. 110, par. 13—212] ***." *Mega*, 111 Ill. 2d at 422.

In the instant case, plaintiff contends that the equitable estoppel exception carved out in *Mega* applies to its action. Plaintiff asserts that the trial court erred in holding, as a matter of law, that since defendant notified plaintiff in 1974 and 1978 of the risks resulting from the X-radiation treatment, the *Mega* equitable estoppel exception

does not apply to plaintiff's cause of action. Plaintiff contends that Michael Reese created in plaintiff a "false sense of security" based on its oral and written statements, omissions, and conduct following plaintiff's June 1978 examination. Plaintiff contends that defendant, through Dr. Schneider, told plaintiff orally and in its June 27, 1978, letter, that plaintiff was "completely normal" and that, "in essence," plaintiff was not at risk of thyroid disease as a result of the irradiation of plaintiff in 1946. Further, plaintiff asserts that defendant's statements, omissions, and conduct indicated to plaintiff that he need do nothing further as to treatment, follow-up, examination or otherwise.

Plaintiff also contends that policy considerations require the application of equitable estoppel to the instant case. Plaintiff contends that defendant had an ongoing obligation to examine and forewarn former patients of the ongoing risks they may suffer. Plaintiff contends that he would have filed suit immediately if he had been told by defendant that he has an increased risk of thyroid cancer and parathyroid disease as a result of the irradiation treatment. Plaintiff contends that "[b]y 1978 at the latest," defendant had a duty to make those disclosures to plaintiff and failed to do so.

Both parties cite the decisions of the supreme court in the companion cases of *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869 (*Witherell I*), and *Witherell v. Weimer* (1987), 118 Ill. 2d 321, 515 N.E.2d 68 (*Witherell II*), to support their positions. In *Witherell*, the plaintiff filed a personal injury action against two physicians and the manufacturer of birth control pills for negligence, strict product liability, and breach of warranty. The trial court granted the motions to dismiss of the defendants on the ground that the plaintiff's action was not brought within the period allowed for under section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1), now section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—212). In *Witherell I*, the appellate court reversed and remanded the matter, holding that a question of fact existed regarding when the statutes of limitation began to run. The supreme court affirmed the decision of the appellate court as to the physicians. (*Witherell*, 85 Ill. 2d at 160.) Later, in *Witherell II*, the supreme court addressed issues raised on appeal after a trial of the matter in *Witherell I*.

More fully, the facts of *Witherell* are as follows. The plaintiff took birth control pills prescribed by Dr. J.I. Weimer, one of the defendant physicians, beginning in 1966. A short time later, the plaintiff began having severe pain and spasms in her leg. In March 1967, the plaintiff

consulted Weimer about the condition. Dr. R.K. Taubert, the other defendant physician and an associate of Dr. Weimer, hospitalized the plaintiff and told her he thought she had a blood clot in her leg. Weimer, however, told the plaintiff that she had a muscle condition and would have to learn to live with it. In 1971, the plaintiff again consulted Weimer, indicating that the pain and spasms in her leg persisted and had worsened. Weimer stated that the pain and spasms were caused by a muscle condition, and told the plaintiff to walk, to massage the leg, and to ignore the pain. In July 1972, the plaintiff again was hospitalized. The plaintiff told Weimer that she heard from other women that birth control pills cause blood clots. Weimer told her that the pills did not cause blood clots, they were safe to take and they would not harm her in any way.

The plaintiff stopped taking the pills for one month in 1973 at the urging of her mother, but after Weimer assured the plaintiff that her leg problems were not caused by the pills, she resumed taking them. The plaintiff continued to consult Weimer regarding the problem, and Weimer told her that the blood clot in her leg was gone and that the trouble with her legs was a muscle condition. In May 1976, the plaintiff was hospitalized and Weimer again told her that the problem with her legs was a muscle condition, and he prescribed whirlpool baths and walking. The plaintiff asked Weimer for a veinogram, about which she had just heard. Weimer did not perform a veinogram test.

After being released from the hospital, the plaintiff consulted a physician not named in the lawsuit, who hospitalized her and discovered that she had bilateral thrombosis; occluded veins as a result of blood clots; and that the condition of her legs was serious. Three months later, the plaintiff filed a "letter complaint" against Weimer and Taubert in the circuit court. That complaint was dismissed without prejudice and another complaint forming the basis of the plaintiff's appeal was filed.

■ The supreme court has set forth the rule that the statute of limitations begins to run when a person knows or reasonably should know of his injury and also reasonably should know that it was wrongfully caused. (*Witherell*, 85 Ill. 2d at 156.) In applying this standard to *Witherell I*, the supreme court stated:

> "Had it not been for the alleged constant reassurance by Dr. Weimer that it was a muscle condition and not Ortho-Novum [the birth control pills] which was causing her problems, and had he not persuaded her it was safe to resume taking it after she voluntarily quit, plaintiff's action would not have been so long delayed." *Witherell*, 85 Ill. 2d at 158.

■ The supreme court found that equitable estoppel applied to prevent the defendant physicians from invoking the statute of limitations as a bar to the plaintiff's action. (*Witherell*, 85 Ill. 2d at 160.) The court stated that in determining whether equitable estoppel applies, it is not the intent of the party estopped but the natural effect upon the other party which must be considered. (*Witherell*, 85 Ill. 2d at 159.) The court further noted that the defendant need not intentionally deceive the plaintiff for equitable estoppel to apply. The only requirement is that the plaintiff reasonably rely on the defendant's conduct or representations. (*Witherell*, 85 Ill. 2d at 159, citing *Bomba v. W.L. Belvidere, Inc.* (7th Cir. 1978), 579 F.2d 1067, 1071.) Under the facts before it, the court in *Witherell I* stated:

"[W]e believe that considerations of fundamental fairness require that the defendant doctors be held estopped by their conduct from now urging that plaintiff should have sooner complained against them for a condition they repeatedly assured her she did not have. *** She is, in our judgment, entitled to an opportunity to prove the allegations upon which the estoppel and her cause of action are based." *Witherell*, 85 Ill. 2d at 160.

■ Plaintiff in the instant case asserts that an application of the analysis in the *Witherell* cases to his own case will lead the court to find that equitable estoppel applies to bar defendant from invoking the statute of limitations as a defense. We disagree. The facts of *Witherell* are distinguishable from the facts of the instant case in a number of ways.

In *Witherell*, unlike in the instant case, there were constant assurances by the defendant, in response to repeated questions by the plaintiff, that the plaintiff's medical problems were not serious. Further, the defendant in *Witherell* informed the plaintiff that her condition was something other than it was—that is, that her leg problem, which in fact was related to blood clots apparently resulting from the birth control pills, was merely a muscle condition. In addition, the conduct by the defendant in *Witherell* extended for more than nine years. During that time, the defendant failed to administer a veinogram test, which was specifically requested by the plaintiff, and failed otherwise to consider the plaintiff's suggestions that her condition might be related to the birth control pills. Further, the plaintiff had ceased taking the pills for a month during that time and resumed the prescription only when the defendant assured her again that the pills were not causing the pain and spasms in her leg.

The facts of her instant case clearly are not as egregious as the facts in *Witherell*. In the instant case, defendant initiated a recall pro-

gram, through which it contacted plaintiff by letter of June 21, 1974, to inform plaintiff of the relation between irradiation treatment and an increased risk of developing benign or malignant thyroid abnormalities. Defendant's letter of March 22, 1978, informed plaintiff that recent analyses of tests indicated that plaintiff's blood contained high thyroglobulin levels, and further, that most patients with thyroid nodules also had high thyroglobulin levels. Defendant's third letter to plaintiff, dated June 27, 1978, indicated that the examination performed by defendant's personnel failed to detect any abnormalities in plaintiff's thyroid, and indicated that defendant was uncertain as to how often, if ever, thyroid scan testing should be repeated in irradiated patients. Plaintiff was told by defendant that his thyroid was "normal." Plaintiff discovered he had thyroid cancer in 1982.

We do not believe that the allegations of plaintiff's amended complaint are sufficient to establish that the conduct of or representations by defendant were such that plaintiff could reasonably have relied upon them to believe that he was not at some risk of developing thyroid abnormalities. Plaintiff was informed of the increased risk to which he was subjected as a result of the irradiation treatment he had received. That plaintiff's injury did not manifest itself until more than four years after the alleged negligent conduct is an unfortunate but necessary consequence of enforcing the statute of limitations. See *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 665.

We note that similar results were reached in *Real v. Kim* (1983), 112 Ill. App. 3d 427, 445 N.E.2d 783, and *Smith v. Cook County Hospital* (1987), 164 Ill. App. 3d 857, 518 N.E.2d 336. *Smith* involved a medical malpractice action which was dismissed on the basis of being untimely under the statute of limitations. In *Real v. Kim* (1983), 112 Ill. App. 3d 427, 445 N.E.2d 783, the plaintiff brought an action for wrongful death, alleging medical malpractice for misdiagnosis in 1976 of the plaintiff's medical condition. In 1979, it was discovered that the plaintiff had brain cancer, a condition which led to his death. An action was filed on behalf of the plaintiff in 1981. The trial court granted the defendant's motion to dismiss the complaint on the grounds that the plaintiff's claims were barred by the statute of limitations (Ill. Rev. Stat. 1979, ch. 83, par. 22.1 (now Ill. Rev. Stat. 1987, ch. 110, par. 13—212)) and that, as a matter of law, the defendants were not estopped from asserting the statute of limitations as a defense. The appellate court affirmed the trial court, finding that the action was filed outside the time allowed for under the statute of limitations. (*Real*, 112 Ill. App. 3d at 431.) Further, the appellate court stated that equitable estoppel did not preclude the defendant from in-

voking the statute of limitations as a bar to the action, since the court found that the plaintiff's complaint failed to state facts which, if proven, would establish estoppel. *Real*, 112 Ill. App. 3d at 436.

■■ We also address the question of the propriety of the dismissal of plaintiff's amended complaint under the law regarding motions to dismiss. The parties apparently agree that defendant's motion to dismiss, while not expressly drawn pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), is in the nature of a section 2—615 motion, rather than a section 2—619 (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) motion. In determining the propriety of the granting of a motion to dismiss under section 2—615, a court must accept all properly pleaded facts as true and be concerned only with the question of law presented by the pleadings. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.) In the instant case, therefore, we assume that the well-pleaded facts of plaintiff's amended complaint are true. The question of law raised by plaintiff's complaint involves application of the statute of limitations.

■■ ■ Ordinarily, the statute of limitations is an affirmative defense which cannot be raised by a motion to strike (a section 2—615 motion), unless it appears from the face of the complaint as a matter of law that the cause of action for which recovery is sought is barred by the statute of limitations. (*Dana v. Neuchiller* (1954), 2 Ill. App. 2d 170, 118 N.E.2d 885 (abstract of opinion); see also Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) That plaintiff's complaint in the instant case was filed outside the statute of limitations (Ill. Rev. Stat. 1985, ch. 110, par. 13—212) is clear from the complaint. Plaintiff also alleges in his complaint, however, that equitable estoppel precludes defendant from invoking the statute of limitations as a bar to his action. We find that the resolution of the equitable estoppel issue also can be made by looking to the face of the complaint and the exhibits attached to the complaint. Therefore, we believe that the propriety of the dismissal of plaintiff's amended complaint is properly determined by the standards relevant to a section 2—615 motion.

■■ ■ When determining whether to grant or deny a section 2—615 motion to dismiss, a court must consider the legal sufficiency of the complaint based only on the allegations of the complaint. (*Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 507 N.E.2d 164.) Exhibits attached to the complaint become a part of the complaint, and factual assertions contained in the exhibits which are inconsistent with the allegations of the complaint negate such allegations. (*Goldstein*, 154 Ill. App. 3d at 598.) While a motion to dismiss admits all well-pleaded

facts and reasonable inferences that can be drawn therefrom (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d 976; *American International Hospital v. Chicago Tribune Co.* (1985), 136 Ill. App. 3d 1019, 483 N.E.2d 965), any allegations of the complaint which conflict with the facts contained in the exhibits attached to the complaint are not deemed to be admitted (*Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 507 N.E.2d 164). A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts could be proved which would entitle the plaintiff to recover. *Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 495 N.E.2d 1132.

Defendant asserts that the letters attached to plaintiff's complaint, which are the letters written by defendant in 1974 and 1978 regarding defendant's examinations of plaintiff, conflict with the complaint since they indicate that defendant informed plaintiff of the risks of the irradiation therapy. Therefore, defendant asserts, the allegations of the complaint indicating that defendant failed to inform plaintiff cannot be taken as true. Plaintiff responds that there is no inconsistency between the exhibits and the complaint, and asserts that he could have brought suit in 1978 if defendant told him he was at risk at that time.

We find that the exhibits to plaintiff's complaint clearly indicate that defendant notified plaintiff of the known potential risks of the radiation treatment and that follow-up treatment was recommended. For instance, defendant's June 21, 1974, letter stated, "it is now well recognized that patients who received x-ray treatment to the head and neck regions during childhood have an increased risk of developing thyroid neoplasms, both benign and malignant." Defendant's March 22, 1978, letter stated that plaintiff's thyroglobulin level was higher than that of most other patients and that most patients with thyroid nodules had high thyroglobulin levels. Although the March 1978 letter states that the hospital was "still uncertain as to how often, if ever, thyroid scans should be repeated in all irradiated patients," the June 1974 letter indicated that patients who are apparently normal should be examined "properly every year as they may develop nodules." The exhibits thus clearly indicate that defendant informed plaintiff of risks and the benefit and necessity of follow-up treatment.

In order to rely on the doctrine of equitable estoppel, plaintiff must show that he relied upon an act or representation of fact and had no knowledge or means of knowing the true facts. (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 371, 335 N.E.2d 491; *Den-*

*ton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34.) Since we have found that defendant informed plaintiff of the acts known to defendant regarding the risks and follow-up treatment necessary in connection with the irradiation treatment plaintiff underwent, we hold that the trial court properly dismissed plaintiff's amended complaint, since it is apparent that no set of facts could be alleged under which plaintiff could state a cause of action. *Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 495 N.E.2d 1132; *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 665.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.