2016 IL App (1st) 143189

SIXTH DIVISION
March 25, 2016

No. 1-14-3189

| | | |
|---|---|---|
| SHERI LAWLER, Executor of the Estate of Jill Prusak, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 11 L 8152 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, a corporation, THE UNIVERSITY OF CHICAGO HOSPITALS AND HEALTH SYSTEM, THE UNIVERSITY OF CHICAGO PHYSICIANS GROUP, THE UNIVERSITY OF CHICAGO HOSPITALS, UNIVERSITY RETINA AND MACULA ASSOCIATES, P.C., RAMA D. JAGER, M.D., ADVOCATE CHRIST HOSPITAL AND MEDICAL CENTER, a corporation, and ADVOCATE CHRIST MEDICAL CENTER, a corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (Advocate Health and Hospitals Corporation, a corporation, Advocate Health Care Network, a corporation, Advocate Health Centers, Inc., a corporation, Advocate Professional Group, S.C., a corporation, Advocate Christ Hospital Health Partners, a corporation, Advocate South Suburban Hospital, a corporation, Advocate Health Partners, a corporation, Advocate Medical Group, a corporation, Advocate Christ Medical Group, a corporation, Advocate Christ Hospital Physician Partners, and Advocate Health Care, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Daniel T. Gillespie, |
| Defendants). | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Hoffman and Hall concurred in the judgment and opinion.

## OPINION

¶ 1     This appeal concerns an issue of first impression in Illinois regarding the interplay of

three statutes.  We must determine whether the medical malpractice statute of repose (735 ILCS

5/13-212(a) (West 2010)) bars the application of the relation back doctrine (735 ILCS 5/2-616(b) (West 2010)) for purposes of adding a claim to an existing case under the Illinois Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2010)).  We hold that the relation back doctrine applies so the wrongful death action is not barred.

¶ 2                                    BACKGROUND

¶ 3     On August 4, 2011, Jill Prusak, the decedent in this case, filed a medical malpractice cause of action within both the two-year statute of limitations and four-year statute of repose under section 13-212(a).  Prusak filed a two-count complaint against defendants, The University of Chicago Medical Center, The University of Chicago Hospitals and Health System, The University of Chicago Physicians Group, The University of Chicago Hospitals (collectively, the University of Chicago defendants), University Retina and Macula Associates, P.C., Dr. Rama Jager, Advocate Christ Hospital and Medical Center, and Advocate Christ Medical Center (collectively, the Christ Hospital defendants), and other medical providers who have since been dismissed from the case.[1]  Prusak alleged that Dr. Jager misdiagnosed her macular pathology and that this misdiagnosis led to defendants' failure to recognize central nervous system lymphoma. Count I alleged negligence against the University of Chicago defendants and asserted that Dr. Jager was an agent or apparent agent of the University of Chicago defendants.  Count II made the same allegations with respect to the Advocate defendants and the Christ Hospital defendants.  In both counts, Prusak specifically alleged:

---

[1]     By agreed order, the parties stipulated to the voluntary dismissal of certain defendants under section 2-1009 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 2010)), including Advocate Health and Hospitals Corporation, Advocate Health Care Network, Advocate Health Centers, Inc., Advocate Professional Group, S.C., Advocate Christ Hospital Health Partners, Advocate South Suburban Hospital, Advocate Health Partners, Advocate Medical Group, Advocate Christ Medical Group, Advocate Christ Hospital Physician Partners, and Advocate Health Care (collectively, the Advocate defendants).

"From November 5, 2007 through July of 2009, and at all times mentioned herein,

Defendant, JAGER, was negligent in the following ways:

    a)     Failed to order appropriate diagnostic testing on November 5th, 2007 for a

        patient with bilateral metamorphopsia and visual acuity that could not be

        corrected to normal levels in either eyes;

    b)     Failed to diagnose macular pathology[;] and

    c)     Failed to perform appropriate medical evaluation of a 47 year old patient

        with macular pathology and no known systemic illness."

Prusak also alleged that she "neither knew or should have known her injury and that it may have been wrongfully caused before August 7, 2009, when a brain biopsy was performed and this case is brought within two (2) years of the date of said discovery."

¶ 4     Defendants each filed answers to Prusak's complaint by April 20, 2012. A period of discovery followed during which Prusak answered defendants' interrogatories on August 16, 2012. In response to the question asking Prusak to describe each and every personal injury, condition, and symptom of ill-being sustained as a result of the occurrence alleged in her complaint, she described reoccurrences of both lymphoma (second brain tumor) and ocular lymphoma.

¶ 5     Prusak died on November 24, 2013, after the expiration of the four-year statute of repose. On March 11, 2014, the trial court granted Prusak's daughter, Sheri Lawler, leave to file an amended complaint, substituting herself as party plaintiff and as the executor of Prusak's estate.

¶ 6     Lawler filed a four-count first amended complaint on April 11, 2014. Two of the counts alleged claims under the Illinois survival statute (755 ILCS 5/27-6 (West 2010)) for injuries suffered by Prusak prior to her death. The other two counts sounded in wrongful death. The

amended complaint identified Prusak's survivors as Lawler; Charles Allen Boswell, Jr., Prusak's brother; and Charles Allen Boswell, Sr., her father. All four counts alleged the same acts of negligence and operative facts as the original complaint.

¶ 7 On May 9, 2014, the University of Chicago defendants filed an answer to count II, the survival claim, and moved to dismiss count I, the wrongful death claim, pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2010)). The University of Chicago defendants argued that the medical malpractice statute of repose (section 13-212(a)) barred Lawler's wrongful death claim. Defendants Dr. Jager and University Retina and Macula Associates filed a similar motion to dismiss on May 29, 2014. The remaining defendants also argued that Prusak's brother and father were not proper beneficiaries under the Wrongful Death Act and moved to strike the allegations concerning the pecuniary loss to those individuals.[2]

¶ 8 On September 17, 2014, after briefing and argument, the trial court entered a written order granting defendants' motions to dismiss count I (wrongful death) of the amended complaint with prejudice. The court found that the wrongful death claims were only valid "if the deceased was not time-barred to bring the action at the time of his or her death." The court stated that because the wrongful death claims were added in the amended complaint in April 2014, more than four years after the date of the last medical treatment in July 2009, the claims were barred by the statute of repose, "unless the Court finds that Plaintiff's wrongful death claim relates back to her original medical negligence claim." The court held that the relation back

---

[2] Whether Prusak's brother and father are proper beneficiaries under the Wrongful Death Act is not at issue in this appeal. Lawler agrees in her opening brief that the issue is not before this court because the trial court, in dismissing the wrongful death counts in their entirety, declined to grant the alternative relief defendants sought; however, the trial court indicated that defendants' position on this issue was correct. Lawler states that she "is persuaded that the Defendants' position with respect to the father and brother is probably meritorious, and in the event of reversal and remand will undertake to cure the situation voluntarily."

doctrine did not apply to this case "because there is no precedent, as shown from the absence of medical malpractice cases where courts allowed plaintiffs to file a claim after the four-year period expired." The trial court noted our supreme court's decision in *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450 (1990), which discussed the General Assembly's efforts to curb medical insurance premiums from increasing by artificially limiting the potential liability that physicians and medical personnel might face for the care they provided to patients. The court therefore concluded that Lawler's wrongful death claim was a new action barred by the four-year statute of repose. The order was made final and appealable under Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)).

¶ 9 The trial court entered subsequent *nunc pro tunc* orders on October 2, 2014 and October 17, 2014 to add count III of the amended complaint to the original dismissal order and clarify that the dismissal order also applied to the Christ Hospital defendants, University Retina and Macula Associates, and Dr. Jager. The *nunc pro tunc* orders also included Rule 304(a) language. This appeal followed.

¶ 10 ANALYSIS

¶ 11 Lawler argues that under a correct interpretation of the relevant statues, a wrongful death action can relate back to the original complaint even after more than four years have elapsed since the last date of the alleged negligent medical treatment. She notes that Prusak's original complaint was timely filed and that the alleged negligent transactions in the original and amended complaint are completely identical. Lawler argues that the relation back doctrine should apply because the original claims supplied defendants with the information necessary to prepare their defense to the amended claims.

¶ 12    Defendants respond that the trial court correctly dismissed the wrongful death counts in the amended complaint because they were separate and distinct causes of action than those in the existing action and, therefore, did not relate back to the original complaint.  Defendants contend that the relation back doctrine is not an exception to the medical malpractice statute of repose.  They rely on the language and purpose of the statute of repose, and the doctrine that the more specific statute should govern over the more general relation back statute.  They also argue that the statute of repose controls because it is substantive and not procedural and, therefore, takes precedence over the relation back statute.

¶ 13                    Standard of Review and Statutory Interpretation

¶ 14    We review whether the trial court erred in dismissing Lawler's wrongful death claims pursuant to section 2-619(a)(5) of the Code, which provides that a defendant may file a motion for dismissal if "the action was not commenced within the time limited by law."  735 ILCS 5/2-619(a)(5) (West 2010).  We review this dismissal *de novo*.  See *O'Toole v. Chicago Zoological Society*, 2015 IL 118254, ¶ 16.

¶ 15    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indication of that intent.  *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009).  "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning."  *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009).  "The statute should be evaluated as a whole, with each provision construed in connection with every other section."  *Id*.  When statutory language is clear and unambiguous, we enforce it as written without reading into it exceptions, conditions, or limitations not expressed by the legislature.  *Martin v. Office of the State's Attorney*, 2011 IL App (1st) 102718, ¶ 10.

¶ 16    "However, when the plain language of one statute apparently conflicts with the plain language of another statute, we must resort to other means in determining the legislature's intent. Where two statutes conflict, we will attempt to construe them together, *in pari materia*, where such an interpretation is reasonable." *Moore v. Green*, 219 Ill. 2d 470, 479 (2006) (citing *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001)). We must presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Price v. Phillip Morris, Inc.*, 2015 IL 117687, ¶ 30; *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 541 (1992). "Further, in determining legislative intent, we may consider the purpose and necessity for the law as well as the consequences that would result from interpreting the statute in one way or another." *Price*, 2015 IL 117687, ¶ 30 (citing *People v. Gaytan*, 2015 IL 116223, ¶ 23). The interpretation of a statute is reviewed *de novo*. *Id*.

¶ 17    This case presents a classic clash of apparently conflicting statues which requires us to assess each relevant statute to ensure they operate together consistently with their legislative purposes. We now review each of the pertinent statutes and the legislature's intent as interpreted by Illinois courts.

¶ 18                                    Wrongful Death Act

¶ 19    No cause of action for wrongful death existed at common law. *Moon v. Rhode*, 2015 IL App (3d) 130613, ¶ 16. First enacted in 1853, the Wrongful Death Act created a new cause of action to compensate a decedent's survivors. *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 413 (1989). In contrast, "[p]ersonal injury actions were born of the common (judge-made) law and are susceptible to changes by the judiciary." *Moon*, 2015 IL App (3d) 130613, ¶ 16. At common law, the personal injury action died with the decedent. *Id*. The survival statute (755 ILCS 5/27-6 (West 2010)), also a creature of the legislature enacted in 1872, allows for

recovery of damages the injured party could have recovered, had she survived. *Moon*, 2015 IL App (3d) 130613, ¶ 16; see also *Murphy v. Martin Oil Co.*, 56 Ill. 2d 423, 426 (1974). The Wrongful Death Act and survival statute are conceptually distinct in that one relates to an action arising upon wrongful death while the other relates to a right of action for personal injury arising during the life of the injured person. *Murphy*, 56 Ill. 2d at 431. However, our supreme court has noted that "[n]ot every death is recompensable." *Wyness*, 131 Ill. 2d at 413. Illinois courts have long held that, in a wrongful death action, "the cause of action is the wrongful act, neglect or default causing death, and not merely the death itself." (Internal quotation marks omitted.) *Id*. at 411.

¶ 20     The pertinent provisions of the Wrongful Death Act state:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would, *if death had not ensued*, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." (Emphasis added.) 740 ILCS 180/1 (West 2010).

In addition, section 2 of the Wrongful Death Act states:

"Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person. In every

such action the jury may give such damages as they shall deem a fair and just

compensation with reference to the pecuniary injuries resulting from such death,

including damages for grief, sorrow, and mental suffering, to the surviving spouse

and next of kin of such deceased person.

\* \* \*

Every such action shall be commenced within 2 years after the death of

such person \*\*\*."  740 ILCS 180/2 (West 2010).

¶ 21    In short, the Wrongful Death Act provides the exclusive remedy available when death

occurs as a result of tortious conduct.  *Murphy*, 56 Ill. 2d at 426.  In *Wyness*, a wrongful death

action, the defendants argued that the two-year statute of limitations for personal injury actions

should have started running *before* the decedent's death because the plaintiff knew of the

decedent's injuries and the cause of those injuries before death.  Our supreme court disagreed,

explaining:

"The 'injury' which opens the door to initiation of a personal injury suit \*\*\* is not

the same 'injury' which opens the door to a wrongful death suit.  Though both

actions require an individual to have been harmed in some way through the

actions of another, this injury at the hands of another is not the sole thread which

weaves the fabric undergirding both causes of action.  A wrongful death action

can only be instituted for the benefit of the next of kin who have suffered an

'injury' because a family member has died when that family member's death

resulted from an injury wrongfully caused by another.  [Citation.]  The

precipitating 'injury' for the plaintiffs in a wrongful death action, unlike the injury

in a personal injury action, is the death; that the death must also be the result of a

wrongfully caused injury suffered by the deceased at the hands of another does not alter the analysis. *The wrongful injury suffered by the deceased is the distinguishing characteristic of the particular death*." (Emphasis added.) *Wyness*, 131 Ill. 2d at 414-15.

¶ 22 The supreme court in *Wyness* explained that the decedent's beneficiaries suffered a pecuniary injury by reason of the decedent's death. The decedent, however, was the person who suffered the actual physical injury which led to the death. With respect to that physical injury, the beneficiaries are said to step into the shoes of the decedent. In *Kessinger v. Grefco, Inc.*, 251 Ill. App. 3d 980, 987-88 (1993), the court described the relationship this way:

"Although courts recognize the wrongful death action as an independent cause of action which does not arise until after death, the action is derivative of the injury to the decedent and is grounded on the same wrongful act of defendant whether it was prosecuted by the injured party during his lifetime or by a representative of the estate. The remedy depends upon the existence, in the decedent, at the time of his death, of a right of action to recovery for such injury."

*Id.*

¶ 23 A wrongful death action will lie where the deceased had a claim that was not time-barred on or before his death. See *O'Brien v. O'Donoghue*, 292 Ill. App. 3d 699, 703 (1997); *Kessinger*, 251 Ill. App. 3d at 986; *Wolfe v. Westlake Community Hospital*, 173 Ill. App. 3d 608, 612 (1988); *Fountas v. Breed*, 118 Ill. App. 3d 669, 674 (1983). The Wrongful Death Act requires a plaintiff sue within two years from the time of death (740 ILCS 180/2 (West 2010)). However, because the plaintiff's rights are derivative of those which the decedent himself possessed, that time may be impacted by other limitations provisions, which may supersede the

wrongful death statute and recast the time in which the action may be brought. An example includes the limitations provisions for medical malpractice claims (735 ILCS 5/13-212(a) (West 2010)), which we review next.

¶ 24                    The Limitations for Filing a Medical Negligence Claim

¶ 25    Section 13-212(a) of the Code establishes limitation and repose periods for filing medical malpractice actions against medical providers. First enacted on September 12, 1975, and adopted as part of "An Act to revise the law in relation to medical malpractice" (Pub. Act 79-960 (eff. Nov. 11, 1975)), the section states:

> "Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2010).

See also *Anderson v. Wagner*, 79 Ill. 2d 295 (1979) (providing a comprehensive history and explanation of the enactment of the medical malpractice statute of repose).

¶ 26    In *Hayes*, a case in which defendants here strongly rely, our supreme court explained the legislature enacted of the medical malpractice repose period as part of its response to a "medical

11

malpractice insurance crisis," created by " 'the increasing reluctance of insurance companies to write medical malpractice insurance policies and the dramatic rise in premiums demanded by those companies which continued to issue policies.' " *Hayes*, 136 Ill. 2d at 457 (quoting *Anderson*, 79 Ill. 2d at 301).

¶ 27 In *Hayes*, the supreme court determined whether the four-year statute of repose in section 13-212(a) applied to third-party contribution actions brought against a doctor by the defendants in an underlying negligence action. The *Hayes* court held that the application of the repose period in section 13-212(a) was not limited to a direct action by the injured party. *Id.*, at 456-57. The court agreed that an action of contribution need not be predicated on the same theory of recovery as that asserted by the plaintiff in the underlying action. *Id.* at 457. Indeed, " 'the basis for a contributor's obligation rests on his liability in tort to the injured party [citation]' even if the plaintiff in the direct action did not assert the theory of liability on which the third-party action relies." *Id.*, at 457 (quoting *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 118 Ill. 2d 447, 462 (1987)).

¶ 28 The supreme court's plain reading of the statute led it to conclude that "the medical malpractice statute of repose bars any action after the period of repose seeking damages against a physician or other enumerated health-care provider for injury or death arising out of patient care, whether at law or in equity." *Id.* at 456. "Because a suit for contribution against the insured for damages arising out of patient care exposes insurance companies to the same liability as if the patient were to have brought a direct action against the insured, we believe that the term 'or otherwise' in the medical malpractice statute of repose includes actions for contribution against a physician for injuries arising out of patient care." *Id.* at 458. The supreme court believed inclusion of the term 'or otherwise,' following more restrictive language, indicated the

legislature intended the term to be all-inclusive and that its inclusion "demonstrates the General Assembly's desire at the time it originally enacted the statute to limit a physician's exposure to liability for damages for injury or death arising out of patient care under all theories of liability, whether then existing or not." *Id*. at 458-59.

¶ 29    *Hayes* is distinguishable from this case for one simple, but crucial, basis. The supreme court did not consider the relation back doctrine and, therefore, did not have the opportunity to consider the issue presented here.

¶ 30                                    Relation Back Doctrine

¶ 31    The relation back statute provides:

"The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time *under any statute* or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held

to relate back to the date of filing of the original pleading so amended." (Emphasis added.) 735 ILCS 5/2-616(b) (West 2010).

¶ 32    In *Zeh v. Wheeler*, 111 Ill. 2d 266, 269 (1986), the plaintiff amended her complaint to change the address of the location where she allegedly was injured. The trial court granted the defendants' motion to dismiss because the amendment stated a new and different cause of action which did not arise out of the same transaction or occurrence set forth in the original complaint. *Id*. at 269-70. The parties agreed that the plaintiff's amended complaint was barred by the applicable personal injury statute of limitations unless the amendment related back to the date of the filing of the original complaint.

¶ 33    The *Zeh* court affirmed the dismissal of the plaintiff's amended complaint and, significantly for the purposes of this case, noted that section 2-616(b) no longer required that the original and amended pleadings state the same cause of action. *Id*. at 272-73. The court explained:

"In 1933, the legislature replaced amended section 39 of the former practice act with section 46 of the Civil Practice Act. The 1933 amendment omitted the words 'and is substantially the same as' so that amendments could be made if the matter introduced by the amended pleading 'grew out of the same transaction or occurrence set up in the original pleading.' (Ill. Rev. Stat. 1939, ch. 110, par. 46(2).) The 1933 Civil Practice Act thus shifted from the common law requirements as set out in *Carlin v. City of Chicago* (1914), 262 Ill. 564, 104 N.E. 905, that the original pleading technically state a cause of action and that the amended pleading set up the same cause of action as the original pleading to a test of identity of transaction or occurrence. [Citation.] The legislative change was

14

based on the rationale that 'a defendant has not been prejudiced so long as his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him.' " *Id*., at 272-73 (quoting *Simmons v. Hendricks*, 32 Ill. 2d 489, 495 (1965)).

The supreme court specifically noted that "a defendant should not be required to defend against stale claims of which he had no notice or knowledge." *Id*. at 274.

¶ 34    The *Zeh* court further explained that "the legislature's reason for this change was its belief that defendants would not be prejudiced by the addition of claims so long as they were given the facts that form the basis of the claim asserted against them prior to the end of the limitations period." *Avakian v. Chulengarian*, 328 Ill. App. 3d 147, 154 (2002) (citing *Zeh*, 111 Ill. 2d at 273). "This emphasis on the identity of the occurrence rather than the identity of the cause of action still provides protection to defendants because, as long as they are aware of the occurrence or transaction that is the basis of the claim, they can be prepared to defend against that claim, whatever theory is advanced." *Id*., at 154 (citing *Zeh*, 111 Ill. 2d at 279). Thus, the critical inquiry becomes " 'whether there is enough in the original description to indicate that plaintiff is not attempting to slip in an entirely distinct claim in violation of the spirit of the limitations act.' " *Simmons*, 32 Ill. 2d at 497 (quoting Oliver L. McCaskill, Illinois Civil Practice Act Annotated, 126-127 (Supp. 1936)).

¶ 35    The *Zeh* court concluded that, because maintaining a stairway at one location involved different conduct by different persons at a different time and a different place from maintaining a stairway at another location, changing the address would involve two different locations and, therefore, two different occurrences, which did not relate back to the original pleading. *Zeh*, 111 Ill. 2d at 275. In contrast, simply changing a word in an address from "Street" to "place" would

relate back because it constituted two different descriptions of the same occurrence or locality. (Internal quotation marks omitted.) *Id*. at 276-77.

¶ 36    Relevant to this case, the *Zeh* court, quoting a United States Supreme Court decision, stated that " '[t]here is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard.' " *Id*., at 280 (quoting *Tiller v. Atlantic Coast Line R.R. Co.*, 323 U.S. 574, 581 (1945)).  With these statutes and legislative history in mind, we now turn to the merits of this case.

¶ 37                Application of the Relation Back Doctrine to the Statute of Repose

¶ 38    Defendants argue that a host of substantive and procedural differences exist between Lawler's wrongful death claims and the survival claims she is pursuing in Prusak's name. Defendants assert that, because Lawler's wrongful death claims constitute distinct causes of action than the survival claims, even though the underlying facts are the same, the addition of the wrongful death claims to the amended complaint should be regarded as a new suit commenced on the date the amended complaint was filed more than four years after the last act of alleged medical malpractice and, therefore, outside the repose period.

¶ 39    One case defendants cite, *Durham v. Michael Reese Hospital Foundation*, 254 Ill. App. 3d 492 (1993), determined whether the four-year medical malpractice statute of repose or the two-year Wrongful Death Act statute of limitations applied to a medical malpractice case where the alleged malpractice caused the decedent's death.  Relying on *Hayes*, the *Durham* court found that section 13-212(a) of the Code controlled and, therefore, barred the plaintiff's action because more than four years elapsed from the date of the alleged negligent treatment of the decedent until the complaint's filing.  *Id*., at 495.

¶ 40    *Durham* is inapposite as the decedent did not file his own medical malpractice claim prior to his death, and the original cause of action in that case was filed after the expiration of the four-year repose period.  And like in *Hayes*, the parties in *Durham* did not raise the application of the relation back doctrine.

¶ 41    Defendants also rely upon *Real v. Kim*, 112 Ill. App. 3d 427 (1983), in which the plaintiff, as special administrator of decedent's estate, filed an action under the then Wrongful Death Act and survival statute (Ill. Rev. Stat. 1979, ch. 70, ¶ 1, *et seq.*, and ch. $110^{1/2}$, ¶ 27-6), alleging medical malpractice.  *Real*, 112 Ill. App. 3d at 428.  The trial court dismissed the case as time-barred by section 21.1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, ¶ 22.1 (now codified as section 13-212(a))).  *Real*, 112 Ill. App. 3d at 428-29.  The decedent received a medical evaluation on April 13, 1976, which produced normal test results.  The plaintiff alleged that this diagnosis was incorrect because proper interpretation would have disclosed the presence of an abnormality.  *Id*. at 429.  In June 1979, the decedent was diagnosed as having brain cancer.  The decedent died on August 9, 1980.  The plaintiff filed the complaint on June 19, 1981.  *Id*. at 430.

¶ 42    The *Real* court held that section 21.1 barred the survival action because the four-year limitations period began to run from the date of the alleged acts of negligence–April 13, 1976.  *Id*. at 430.  As to the wrongful death claim, the court noted that the plaintiff misapprehended the distinction between the two-year limitations period under section 2 of the Wrongful Death Act and "the fact that there is no liability under the Act unless the condition precedent specified by section 1 has been fulfilled."  *Id*. at 432.  "The plain language of section 1 provides that there will be no liability under the Wrongful Death Act unless the decedent *could have maintained an action for damages 'if death had not ensued* [citation]*,'* and the supreme court has consistently

acknowledged and given effect to this unambiguous provision." (Emphasis added.) *Id*. (quoting Ill. Rev. Stat. 1979, ch. 70, ¶ 1 (now codified as 740 ILCS 180/1 (West 2010)). " 'One condition upon which the statutory liability depends is that the deceased had a right of recovery for the injuries at the time of his death, and there is no right in the administrator to maintain an action unless the deceased had the right to sue at the time of his death.' " *Id*. at 433 (quoting *Mooney v. City of Chicago*, 239 Ill. 414, 423 (1909)).

¶ 43    At the time death occurred in *Real*, the four-year repose period of section 21.1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, ¶ 21.1) barred the decedent from maintaining an action for the conduct which allegedly caused his death. *Real*, 112 Ill. App. 3d at 434. "It necessarily follows that section 1 of the Wrongful Death Act precludes plaintiff from bringing a wrongful death action for the same alleged malpractice." *Id*.

¶ 44    In this case, at the time of Prusak's death, section 13-212(a) would not have precluded her from maintaining an action for the conduct which allegedly caused her death because here, unlike the decedent in *Real*, Prusak had *already* filed a cause of action for medical negligence. If Prusak had not filed a medical malpractice action prior to her death, the four-year repose period would have already expired, preventing Lawler from seeking a wrongful death claim under the *Real* decision. Accordingly, based on the holding in *Real*, section 1 of the Wrongful Death Act should not preclude Lawler from bringing a wrongful death claim for the same alleged malpractice because Prusak could have maintained a cause of action for damages " 'if death had not ensued.' " *Id*. at 432 (quoting Ill. Rev. Stat. 1979, ch. 70, ¶ 1 (now codified as 740 ILCS 180/1 (West 2010)).

¶ 45    Similarly, defendant's reliance on cases such as *Wolfe, O'Brien*, and *Limer v. Lyman*, 220 Ill. App. 3d 1036 (1991), is not well placed because those cases did not involve the relation back doctrine.

¶ 46    In contrast to *Durham*, *Real*, *O'Brien*, and *Limer*, this case does not involve an original action newly filed after the expiration of the statute of repose, but a case that was active at the time of the decedent's death and filed within the four-year repose period.  This case involves the filing of an amendment to an action that was timely filed and pending when the decedent died. This distinguishing characteristic triggers the relation back doctrine, which provides that a pleading may be amended before final judgment under certain circumstances.  This section "is remedial in nature and should be applied liberally to favor hearing a plaintiff's claim." *Avakian*, 328 Ill. App. 3d at 154 (citing *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 106 (1996)).  "Thus, plaintiffs are not to be barred from having the merits heard because of technical rules of pleading, and courts are to elevate issues of substance over form."  *Id*. at 154.  "Medical malpractice plaintiffs, in particular, are afforded every reasonable opportunity to establish a case, and to this end, amendments to pleadings are liberally allowed to enable the action to be heard on the merits rather than brought to an end because of procedural technicalities."  *Id*.

¶ 47    The plaintiff in *Sompolski v. Miller*, 239 Ill. App. 3d 1087 (1992), appealed from the trial court's dismissal of her wrongful death claim stemming from a car accident that occurred on December 10, 1985.  The decedent sued the defendant for personal injuries on April 9, 1986.  *Id*. at 1088.  The decedent died on November 14, 1988.  Seven months later, the plaintiff moved to substitute herself for the decedent and to appear in a representative capacity for him in the personal injury suit filed against the defendant.  On September 27, 1991, more than two years

after the decedent's death, the plaintiff filed an amended complaint that included an additional count for damages relating to the decedent's wrongful death. *Id*.

¶ 48 The *Sompolski* court reversed the trial court and ruled that the wrongful death claim related back to the original personal injury claim filed by the decedent. *Id*. at 1094. The court found the wrongful death claim was not barred by the two-year statute of limitations for personal injury claims. *Id*. According to the court, "the additional wrongful death claim filed by plaintiff arose from the same transaction or occurrence as that at issue in [the decedent's] original complaint, *i.e.*, the December 1985 automobile accident." *Id*. at 1091.

¶ 49 Citing *Zeh*, the *Sompolski* court stated that "[t]he right to amend does not depend on whether the cause of action set out in the amendment is substantially the same as that stated in the original pleading, but depends on whether the amendment relates back to the occurrence set out in the original pleading." *Id*. at 1090 (citing *Zeh*, 111 Ill. 2d at 272-73). "As long as the defendant has been apprised of the essential information necessary to prepare a defense, an amended complaint will be deemed to relate back to the original pleading [citation], and a defendant is not prejudiced by allowance of an amendment 'so long as his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him.' " *Id*. at 1090-91 (quoting *Simmons*, 32 Ill. 2d at 495). Furthermore, "the liberal provisions of section 2-616(b) apply regardless of whether the claims at issue are governed by a statute of limitations or a prescription that limits the right to bring suit." *Id*. at 1091 (citing *Simmons*, 32 Ill. 2d at 494). The court concluded that the plaintiff's wrongful death suit was not an attempt to " 'slip in an entirely distinct claim,' but was instead an effort to recover full damages for the injuries [the decedent] sustained as a result of the defendant's alleged negligence in the December 1985 automobile accident." *Id*. at 1091-92.

¶ 50   Defendants argue *Sompolski* is inapplicable to this case because it did not involve a medical malpractice claim or the application of the four-year statute of repose.  Defendants assert the legislature treated medical malpractice cases differently from the other kinds of cases because it recognized that medical malpractice cases are uniquely susceptible to long-tail liability and pose special hazards to the public.

¶ 51   Although *Sompolski* did not involve a medical malpractice action, the court's focus was on whether the wrongful death claim was based on the same occurrence as that alleged in the original complaint filed by the decedent.  The *Sompolski* court specifically found the amended claims and original claims sounded in negligence and made the same allegations respecting the defendant's alleged liability for the decedent's injuries.  *Id*. at 1092.

¶ 52   This is directly analogous to the case before us.  Prusak timely filed her original complaint within both the two-year statute of limitations and four-year statute of repose in medical malpractice actions.  She alleged in her complaint that defendants failed, among other things, to diagnose her macular pathology.  Prusak answered defendants' interrogatories to apprise them of her medical condition, a reoccurrence of both lymphoma and ocular lymphoma. After Prusak died, Lawler filed her amended complaint after the statutorily mandated time allotted to file a wrongful death action, just as in *Sompolski*.  Like *Sompolski*, the wrongful death claims in this case arose from the same transaction or occurrence described in Prusak's original complaint and defendants were advised of the essential facts necessary to prepare their defense. Defendants have not shown how they will be prejudiced by the allowance of Lawler's amended complaint, especially considering their attention was directed, within the statutory time prescribed, to the facts that form the basis of the claims asserted against them.  *Id*. at 1091; *Simmons*, 32 Ill. 2d at 495.  Lawler's amended complaint is not based on a new set of facts.  This

conclusion is bolstered by the liberal provisions of section 2-616(b), which apply "regardless of whether the claims at issue are governed by a statute of limitations or a prescription that limits the right to bring suit." *Sompolski*, 239 Ill. App. 3d at 1091 (citing *Simmons*, 32 Ill. 2d at 494).

¶ 53    The above-described principles regarding the relation back doctrine also apply in medical malpractice cases. See, *e.g.*, *Cammon v. West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939, 947 (1998) (newly-added allegations against the defendant hospital concerning the failure to achieve adequate hemostasis related back because the original complaint had charged a doctor with failing to achieve adequate hemostasis following the procedure).

¶ 54    The relation back doctrine has been frequently applied to permit an amended complaint against the defendant medical providers when they had received adequate notice of the same operative facts leading to the alleged medical negligence stated in an earlier, timely filed complaint. See *Castro v. Bellucci*, 338 Ill. App. 3d 386, 394-95 (2003) (finding amended complaint related back because the defendant hospital was informed in the second-amended complaint, filed before the expiration of the medical malpractice statutes of limitation and repose, of the plaintiff's claim that symptoms of a predictive stroke were misdiagnosed); *Avakian*, 328 Ill. App. 3d at 157-58 (holding that the defendants received adequate notice from the timely filed earlier complaints that the plaintiff was alleging damages as a result of adverse effects from a prescription); *McArthur v. St. Mary's Hospital of Decatur*, 307 Ill. App. 3d 329, 335 (1999) (finding that the amended complaint related back to the timely filed original complaint because it directed attention to facts concerning the reading of sonograms and X-rays).

¶ 55    We briefly address defendants' additional arguments that certain principles of statutory construction call for the statute of repose to control over the relation back doctrine and Wrongful Death Act. Defendants argue that the statute of repose controls because it is more specific than

the wrongful death and relation back statutes. Defendants also assert the statute of repose controls because it is substantive, unlike the procedural amendments statute containing the relation back provision.

¶ 56   We need not employ these principles of statutory construction because the statutory language is clear and unambiguous. Accordingly, the statutes must be applied as written, without resort to extrinsic aids of statutory construction. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). We are enforcing the pertinent language of the Wrongful Death Act, the medical malpractice statute of repose, and the relation back doctrine as written without imposing limitations not expressed by the legislature upon them. Section 2-616(b) of the Code specifically states, "The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time *under any statute* or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed ***." (Emphasis added.) 735 ILCS 5/2-616(b) (West 2010). Applying this specific language to the medical malpractice statute of repose allows Lawler to maintain the amended complaint alleging wrongful death. This interpretation does not create absurd, inconvenient, or unjust results, because the proposed amended complaint, as compared with the earlier, timely filed complaint, "show[s] that the events alleged were close in time and subject matter and led to the same injury." *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 360 (2008).

¶ 57                    CONCLUSION

¶ 58   For these reasons, we reverse the judgment of the trial court and remand for further proceedings.

¶ 59   Reversed and remanded.